UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MUHAMMID AHMAD,

                    Plaintiff,

          -against-

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, PORT AUTHORITY
POLICE OFFICER BERNARD BUCKNER,
and PORT AUTHORITY POLICE THOMAS
KOSTER,

                    Defendants.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**09 CV 3134 (WFK)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff, Muhammid Ahmad, brings this civil action against defendants, the Port

Authority of New York and New Jersey and two of its police officers, pursuant to 42 U.S.C. §

1983. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. The Honorable Nicholas G. Garaufis referred defendants' motion to me for a Report

and Recommendation in accordance with 28 U.S.C. § 626(b).[1] For the reasons stated below, it is

respectfully recommended that defendants' motion should be granted in part, and denied in part.

## BACKGROUND

      Plaintiff drove a minivan to the John F. Kennedy International Airport ("JFK") on the

evening of July 23, 2006 to pick up a friend. Plaintiff's Rule 56.1 Statement of Undisputed Facts

("Pl.'s Rule 56.1 Statement"), docket entry 30 at 2-3.[2] That same evening, defendant Officers

---

[1] The case has been reassigned to the Honorable William F. Kuntz, II.

[2] Local Civil Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. Local Rule 56.1(a); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., 258 F.3d 62, 72 (2d Cir. 2001). Local Rule 56.1(b) requires that the party opposing a motion for summary judgment submit "a correspondingly numbered

Bernard Buckner and Thomas Koster were assigned to "hack duty" at JFK, whereby plain clothes police officers patrol airport terminals in unmarked vehicles looking for individuals who solicit ground fares without authorization, also known as limo "hustlers." Id. at 3-4.[3]

Much of what happened on the evening of July 23, 2006 is in dispute. Plaintiff and defendants' markedly different versions of the event are set forth as follows. According to plaintiff, as he walked inside the airport terminal, he was pushed from behind into a wall without warning, hit with something on the back of his head, and pushed to the ground. Plaintiff's Deposition Transcript ("Pl.'s Dep."), docket entry 34-3 at 45, 48. Officer Buckner kept plaintiff pinned to the ground by placing his knee and then his foot on plaintiff's face. Id. at 55.

When plaintiff asked Officer Buckner what he had done wrong, Officer Buckner allegedly responded: "You are under arrest, mother fucker. You are going to jail, bitch." Id. at 51. During the attack, another man who plaintiff did not know but later learned was Officer Koster, came over and told the Officer Buckner: "Leave him alone, call the car" and "You don't have to do this. This could be taken against you." Id. at 48-49. Officer Koster helped Officer Buckner restrain and handcuff plaintiff. Id. at 64. Plaintiff admits that he resisted the attempts to restrain him but states that he did not know that Officers Buckner and Koster were police officers. Id. at 48, 64.

After being handcuffed, plaintiff alleges that Officer Buckner continued to yell at him and call him obscenities including "terrorist," threw plaintiff's keys and shoe at plaintiff's face,

---

paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." The parties have both submitted such statements. See Defs.'s Rule 56.1 Statement, docket entry 33, and Pl.'s Rule 56.1 Statement, docket entry 30. The Court has confirmed that the record evidence supports the assertions contained in the 56.1 statements. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (noting that the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement, but must also "be satisfied that the citation to the evidence in the record supports the assertion") (citing Giannullo, 322 F.3d at 143 n.5).

[3] Plaintiff has been arrested five times at JFK for limo hustling; four times in 2006 (including the arrest at issue herein) and once in 2007. Pl.'s Rule 56.1 Statement, docket entry 30 at 9.

and stepped on, broke and threw plaintiff's wristwatch over a fence. Id. at 48-49, 55-57, 65. Plaintiff remained on the ground for half an hour, during which time Officer Buckner kept his foot on plaintiff's face. Id. at 66-67. When a marked Port Authority police car arrived, plaintiff alleges the officers dragged him on the ground and placed him in the car. Id. at 66. Plaintiff alleges that he realized the individuals who had attacked him were police officers only when the marked Port Authority police car arrived. Id. at 68.

According to Officers Buckner and Koster, while they were on patrol, they observed plaintiff and another man named "Junior" soliciting passengers to hire them. Officer Buckner's Deposition Transcript ("Buckner Dep."), docket entry 34-5 at 32; Officer Koster's Deposition Transcript ("Koster Dep."), docket entry 34-6 at 24-25. It was decided that Officer Buckner would arrest plaintiff and Officer Koster would arrest Junior. Buckner Dep., docket entry 34-5 at 32-33; Koster Dep., docket entry 34-6 at 25. Officer Buckner walked over to plaintiff while holding out his shield, identified himself as a Port Authority police officer, and told plaintiff he was under arrest. Buckner Dep., docket entry 34-5 at 33. Plaintiff responded by pushing Officer Buckner in the upper chest which threw Officer Buckner back, and exclaimed "Give me a break," which Officer Buckner interpreted to mean "Don't arrest me this time." Id. at 33. Plaintiff then ran away from Officer Buckner into traffic. Id. at 34, 37.

Officer Buckner chased plaintiff, as did Officer Koster who at one point managed to grab plaintiff before plaintiff broke free. Id. at 38; Koster Dep., docket entry 34-6 at 27. Eventually, either Officer Buckner tackled plaintiff to the ground or, as Officer Koster remembers, plaintiff fell and Officer Buckner fell on top of plaintiff and all three men wrestled on the ground. Buckner Dep., docket entry 34-5 at 38; Supplement to Officer Koster's Deposition Transcript,

Page 25 ("Supp. Koster Dep."), docket entry 37 at 1;[4] Police Criminal Complaint Report, docket entry 34-7 at 3. After plaintiff was handcuffed, the officers "sat [plaintiff] on the curb [and] waited for transport" which took approximately five minutes. Buckner Dep., docket entry 34-5 at 38.

Plaintiff states that as a result of defendants' actions, the back of his head was bruised, he was dizzy, his mouth bled when stitches from prior gum surgery opened, his elbows and knees were scraped and scratched, his wrists were cut from the handcuffs, and he suffered severe pain, including back pain. Pl.'s Dep., docket entry 34-3 at 50, 52, 74; docket entry 34-4 at 5, 7. Although the parties dispute the extent of plaintiff's injuries, see Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem. of Law"), docket entry 28 at 18 (describing plaintiff's injuries as "de minimis"), the record reflects that plaintiff was injured.[5]

Moreover, there is no dispute that after his arrest, plaintiff was driven to JFK's police building where "JFK's medical service treated plaintiff for cuts to his knees, hands and the side of his face." Pl.'s Rule 56.1 Statement, docket entry 30 at 7.[6] It is also undisputed that plaintiff was seen at the Emergency Department of Jamaica Hospital on the morning of July 25, 2006. Pl.'s Rule 56.1 Statement, docket entry 30 at 10. Although the parties dispute whether X-rays

---

[4] As the Court requested, this page from Officer Koster's deposition was filed by defendants' counsel on October 7, 2011.

[5] For example, Officer Buckner testified that plaintiff had scratches and abrasions, and complained of injury to his mouth or face, and hand. Buckner Dep., docket entry 34-5 at 47. Officer Koster testified that plaintiff must have been injured because he was seen by EMS shortly after the incident, though he did not observe plaintiff's injuries. Koster Dep., docket entry 34-6 at 28. Officer Koster also stated that plaintiff may have been bleeding. Id.

[6] At the police building, plaintiff was charged with Unlawful Solicitation of Ground Transportation Services at an Airport, Criminal Trespass in the Third Degree, Resisting Arrest, Disorderly Conduct, and Trespass. Pl.'s Rule 56.1 Statement, docket entry 30 at 7. Plaintiff was later also charged with Assault in the Second Degree. Id. On September 4, 2007, plaintiff pled guilty to a B-Misdemeanor and accepted a six-week anger management program which upon successful completion would result in a conviction for Disorderly Conduct. Id. at 8. On October 23, 2007, plaintiff was convicted of Disorderly Conduct in full satisfaction of the charges resulting from the events in question. Id.

were taken of plaintiff,[7] the medical records[8] set forth that plaintiff had cuts to his face and mouth, and complained of severe pain in those areas.

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 22, 2009. Docket entry 1. Defendants answered the complaint on October 5, 2009. Docket entry 7. The parties conducted discovery. By letter dated June 30, 2010, defendants wrote to the Court stating that they intended to move for summary judgment. Docket entry 15. A few days prior to the deadline for filing the motion for summary judgment, plaintiff's counsel moved to withdraw stating that plaintiff no longer wanted counsel to represent him. Docket entries 18 and 21. Defendants opposed the motion to withdraw. Docket entry 22. The Court ordered plaintiff to confirm whether he had discharged his attorneys, but plaintiff did not respond. Docket entry 24. The Court held a conference on February 16, 2011 but plaintiff failed to appear. Docket entry 25. The Court denied counsel's motion to withdraw, noting that it came on the eve of defendants' motion for summary judgment, and that plaintiff had not confirmed he had discharged his counsel. Id.

Defendants moved for summary judgment on May 11, 2011. Docket entry 27. Plaintiff has opposed the motion,[9] docket entry 29, and defendants have replied. Docket entry 32.

_____

[7] See Pl.'s Dep., docket entry 34-4 at 17; Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Defs.' Reply"), docket entry 32 at 3-4.

[8] See Exhibit W to the Declaration of Karla Denalli in Support of Defendants' Motion for Summary Judgment ("Denallli Decl."), docket entry 34. Plaintiff's primary complaint was mouth pain and he was diagnosed with "minimal facial trauma." Docket entry 34-25 at 3, 8. The records also reflect that plaintiff described the pain he was experiencing as 10 out of 10 ("Worst Possible") and that lacerations were visible. Id. at 4, 7.

[9] Plaintiff only opposes defendants' summary judgment motion with respect to his excessive force claim. Plaintiff does not oppose summary judgment on the other claims in the complaint (namely, that defendant officers deprived him of the rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution, and claims against the Port Authority of New York and New Jersey). See docket entry 1 at 8-10; see also Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"), docket entry 29 at 2 ("This case presents two issues: whether plaintiff's arrest required the use of force at all; and if so, whether that force was reasonable for the given situation"). As plaintiff has not opposed defendants' motion for summary judgment on these claims and there is no basis for these claims in the record, the Court deems these claims abandoned. See Bowan v. Cnty. of Westchester, 706 F.Supp.2d 475, 492 (S.D.N.Y. 2010) (citations omitted); Ferraresso v. Town of Granby, 646 F.Supp.2d 296, 305 (D.Conn. 2009) (deeming abandoned all but plaintiff's excessive force and

**DISCUSSSION**

## I.    Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (internal quotation marks and citations omitted).  A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000) (citation omitted); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment). For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

---

municipal liability claims where plaintiff's opposition memorandum to defendants' motion for summary judgment addressed only those claims).  Therefore, the Court considers only plaintiff's excessive force claim.

"[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." <u>Gallo v. Prudential Residential Services Ltd. P'ship.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994) (citations omitted).  The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. <u>Anderson</u>, 477 U.S. at 257.  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  <u>Niagara Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (quoting <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998)).  Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara, 315 F.3d at 175 (quoting <u>Anderson</u>, 477 U.S. at 252).  Rather, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

## II.      Plaintiff's Excessive Force Claim

Plaintiff alleges that the defendant officers used excessive force in arresting him on July 23, 2006.  An excessive force claim against a police officer[10] during the course of an arrest is analyzed under the Fourth Amendment to the U.S. Constitution. <u>Graham v. Conner</u>, 490 U.S. 386, 394 (1989) ("Where … the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person.").

---

[10] Defendants Buckner and Koster are employees of the Public Safety Department of the Port Authority and designated "Police Officers" as provided for under section 1.20(34)(k) of the New York Criminal Procedure Law. <u>See</u> Rule 56.1 Statement, docket entry 30 at 1-2.

Police officers' use of force during an arrest violates the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" <u>Maxwell v. City of New York</u>, 380 F.3d 106, 108 (2d Cir. 2004) (<u>quoting</u> <u>Graham</u>, 490 U.S. at 397). "[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Tracy v. Freshwater</u>, 623 F.3d 90, 96 (2d Cir. 2010) (citation omitted). The Court considers at least three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 396). The Court must be "careful to evaluate the record 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" <u>Id.</u> (quoting Graham, 490 U.S. at 396). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (quoting <u>Graham</u>, 490 U.S. at 396).

A *de minimis* injury may be probative of the amount and type of force used by the arresting officers, but it is not dispositive of a Fourth Amendment excessive force claim. <u>Richardson v. Providence</u>, No. 09-CV-4647 (ARR)(LB), 2011 WL 3701887, at *7 n.3 (E.D.N.Y. Aug. 22, 2011) (citations omitted). "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." <u>Id.</u> (citing <u>Maxwell v. City of New York</u>, 380 F.3d 106, 109-10 (2d Cir. 2004) (vacating district court's grant of summary judgment where plaintiff was shoved into a police car and suffered only temporary pain and numbness) and <u>Robinson v. Via</u>, 821 F.2d 913, 923-24 (2d Cir. 1987) (denying summary judgment where a police officer "pushed [plaintiff] against the inside of the door of her car,

yanked her out, threw [her] up against the fender, and twisted [her] arm behind [her] back")
(internal quotation marks omitted).)

Summary judgment has been repeatedly denied in this district even where plaintiff suffered relatively minor injuries. See Lemmo v. McKoy, No. 08-CV4264 (RJD), 2011 WL 843974, at *7 (E.D.N.Y. March 8, 2011) (denying summary judgment where plaintiff's injuries were not severe, but where "the cranking of [plaintiff's] thumbs by police officers was entirely gratuitous"); Hamilton v. City of New York, Civil Action Nos. CV-07-3633(DGT), CV-07-3825(DGT), 2009 WL 2226105, at *11 (E.D.N.Y. July 23, 2009) ("[T]he fact that plaintiff merely suffered, what appears to have been, a minor laceration to the right side of his face, does not detract from the unreasonableness of an officer tripping him while he was handcuffed"); Davenport v. Cnty. of Suffolk, No. 99-CV-3088 (JFB), 2007 WL 608125, at *10 (E.D.N.Y. Feb. 23, 2007) (plaintiff's excessive force claim was not futile, despite the *de minimis* nature of the injury, where "the officer intentionally hit [plaintiff's] head on the car during the arrest, causing injury to his head, and [plaintiff] could argue that this alleged gratuitous use of force by an officer constituted an objectively unreasonable use of force") (citations omitted).

**Officer Buckner**

Defendants argue that plaintiff's excessive force claim against Officer Buckner should be dismissed because Officer Buckner's use of force was objectively reasonable.  According to defendants, "plaintiff was tackled only after he assaulted Officer Buckner and actively resisted arrest and attempted to flee." Defs.' Mem. of Law, docket entry 28 at 18-19.  However, plaintiff disputes this account of the events, suggesting it was Officer Buckner who first assaulted him. The parties also dispute other material issues of fact, such as whether plaintiff struck Officer

Buckner and fled, whether Officer Buckner kept his foot on plaintiff's face for an extended time, and whether Officer Buckner threw keys and a shoe at plaintiff's face.

"The Court cannot make credibility determinations on a motion for summary judgment … [and therefore] … cannot determine which version of the incident is accurate and whether the force used was reasonable." Jones v. Lantz, No. 3:09-cv-747(VLB), 2011 WL 2144651, at *5 (D. Conn. May 31, 2011). If a jury credited plaintiff's version of events, it might conclude Officer Buckner's use of force was gratuitous and unreasonable, particularly in light of the relatively minor nature of the crime (unlawful solicitation of ground transportation services), and that plaintiff did not pose a threat to the safety of others (plaintiff was unarmed). See e.g. Wong v. Yoo, 649 F.Supp.2d 34, 56 (E.D.N.Y. 2009) (a reasonable fact finder could conclude defendant officers used objectively unreasonable force in approaching plaintiff from behind and hitting him on the side of his head with a level). Where there are such material issues of fact in dispute, summary judgment is inappropriate. See Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010) (summary judgment inappropriate where the parties disputed whether defendant police officer used pepper spray on plaintiff before or after placing plaintiff in handcuffs, and whether plaintiff resisted arrest).

Defendants additionally suggest that plaintiff's injuries are so "de minimis" that they "do not suffice to state a constitutional violation." Defs.' Reply, docket entry 32 at 3. However, "[t]he central inquiry for purposes of the Fourth Amendment is only whether the force used was *reasonable,* not whether it caused a particular degree of injury." Felmine v. City of New York, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at *20 (E.D.N.Y. Sept. 29, 2011) (emphasis in original). Moreover, plaintiff's injuries as supported by the record (cuts to the face and severe pain necessitating a visit to the emergency room a day after the incident) are not "materially less

severe than those that have been held sufficient to survive summary judgment in <u>Maxwell</u> and <u>Robinson</u>." <u>Lemmo</u>, 2011 WL 843974 at *7.[11]

***Qualified Immunity***

Defendants argue that in any case, Officer Buckner is entitled to qualified immunity because "it was objectively reasonable for Officer Buckner to believe that he was not infringing on plaintiff's Fourth Amendment rights by running after and tackling plaintiff in order to apprehend him." Defs.' Mem. of Law, docket entry 28 at 19. "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18 (1982)). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged conduct." <u>Lennon</u>, 66 F.3d at 420 (citations omitted).

"Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." <u>Thomas v. Roach</u>, 165 F.3d 137, 143 (2d Cir. 1999). That is because "[a] claim that it was objectively reasonable for an

---

[11] Having found plaintiff's injuries consisting of facial lacerations and severe pain sufficient to survive summary judgment on plaintiff's excessive force claim against Officer Buckner, the Court need not consider plaintiff's left knee injury discovered some time after the arrest and allegedly attributable to the arrest, <u>see</u> Pl.'s Opp'n, docket entry 29 at 2; Pl.'s Dep., docket entry 34-4 at 22-23, or defendants' assertion that plaintiff should not be permitted to rely on medical records relating to this knee injury as they "were never exchanged during discovery or at any point prior to submission of plaintiff's opposition papers." Defs.' Reply, docket entry 32 at 4. Rule 37(c)(1) provides that a party who fails to make required disclosures during discovery may not later use that information "on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); <u>see also</u> <u>Design Strategy, Inc. v. Davis</u>, 469 F.3d 284, 297-98 (2d Cir. 2006) (discussing the Court's discretion in imposing a variety of sanctions where a party fails to make required disclosures during discovery). As the medical records relating to plaintiff's knee injury are not needed to decide the instant motion, the Court need not address at this juncture whether they should be excluded pursuant to Rule 37(c)(1). Defendants may move to preclude plaintiff's use of these records at a later point in this litigation, if necessary.

official to believe that his actions did not violate a clearly established right 'has its principal focus on the particular facts of the case.'" Felmine, 2011 WL 4543268 at 10 (quoting Hurlman v. Rice, 927 F.2d 74, 78-79 (2d Cir. 1991); Lemmo, 2011 WL 843974 at *8 (denying defendant's qualified immunity claim where the Court "determined that plaintiff's excessive force claim presents triable issues of fact").

Accordingly, defendants' motion for summary judgment on plaintiff's excessive force claim against Officer Buckner should be denied.

**Officer Koster**

Defendants argue that plaintiff's excessive force claim against Officer Koster should be dismissed because the "Complaint does not allege that Officer Koster used any force against plaintiff." Defs.' Mem. of Law, docket entry 28 at 19.  Plaintiff responds that Officer Koster is still liable if he failed to intervene. Pl.'s Opp'n, docket entry 29 at 6.  But as defendants correctly argue, see Defs.' Reply, docket entry 32 at 5, plaintiff's complaint does not allege a claim based on Officer Koster's failure to intervene and plaintiff is not entitled to raise a new theory of liability for the first time in opposition to a motion for summary judgment. See Hall v. Nat'l City Bank of Pa., No. 06-CV-217-JTC, 2010 WL 1405443, at *7 (W.D.N.Y. March 31, 2010) ("the law is clear that a complaint cannot be amended merely by raising new theories in the papers opposing a summary judgment motion") (citing Beckman v. U.S. Postal Serv., 79 F.Supp.2d 394, 407-08 (S.D.N.Y. 2000); see also Rendely v. Town of Huntington, No. 02:03-cv-03805-ENV, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) (plaintiff was not entitled to raise a failure to intervene claim for the first time in her memorandum in opposition to summary judgment).

Moreover, the record does not support an excessive force claim against Officer Koster. The parties do not dispute that Officer Koster's use of force was limited to restraining and handcuffing plaintiff, once plaintiff was on the ground.[12] "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1 (1968)). Plaintiff acknowledges he resisted arrest, and it was not objectively unreasonable for Officer Koster to use limited force to handcuff him. See Richardson v. Providence, No. 09-CV-4647 (ARR)(LB), 2011 WL 3701887, at * 7 (E.D.N.Y. Aug. 22, 2011) (not unreasonable for officer to briefly twist plaintiff's finger to control his arm for handcuffing, where plaintiff was resisting arrest); Lagasse v. City of Waterbury, Civil Action No. 3:09cv391(VLB), 2011 WL 2709749, at *8 (D.Conn. July 12, 2011) (not unreasonable for officer to use force to subdue plaintiff who resisted being handcuffed).

Although plaintiff does allege that the handcuffs cut the skin around both of his wrists and that the cuffs were "very tight," Pl.'s Dep., docket entry 34-4, at 7-8, "[m]erely placing tight handcuffs on a suspect is not enough for an excessive force claim." Wims v. New York City Police Dept., No. 10 Civ. 6128(PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011). Rather, courts consider whether: "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Felmine, 2011 WL 4543268 at *19 (quoting Esmont v. City of New York, 371

---

[12] Officer Koster testified that while Officer Buckner was wrestling with plaintiff, he approached and handcuffed plaintiff, and that the two officers then "picked [plaintiff] up, brought him to the curb, sat him down …" Supp. Koster Dep., docket entry 37 at 1. The Police Criminal Complaint Report completed by Officer Buckner on the arrest date states that "Officer Koster … joined [Officer Buckner] as the three of us were rolling around in the middle of the street at the location." Police Criminal Complaint Report, docket entry 34-7 at 3. Plaintiff testified: "I was resisting, I was trying to find out what is going on and they both put me down, and one of them pull out the cuffs and cuffed me from the back. I didn't see who is actually doing the handcuffs." Pl.'s Dep., docket entry 34-3 at 64. See also Pl.'s Rule 56.1 Statement, docket entry 30 at 6, in which plaintiff, while contesting defendants' account of Officer Koster's actions, does not contest that after Officer Buckner and plaintiff fell to the ground, "Officer Koster who ran after Officer Buckner and plaintiff, handcuffed plaintiff."

F.Supp.2d 202, 215 (E.D.N.Y. 2005).  Plaintiff does not demonstrate that he complained to either of the officers about the handcuffs being too tight.  Compare Castro v. Cnty. of Nassau, 739 F.Supp.2d 153, 161 (E.D.N.Y. 2010) (denying summary judgment where plaintiff alleged "defendants ignored his request to loosen the handcuffs, leaving his wrists red and sore") with Cunningham v. McCluskey, No. 05 Civ. 10169(DAB)(KNF), 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (granting summary judgment where plaintiff testified that the handcuffs were "excruciatingly tight" but did not put forth evidence that he complained about the tightness).  Plaintiff does not allege, and there is no support in the record, that Officer Koster intentionally tightened his handcuffs to cause him pain. See e.g. Felmine, 2011 WL 4543268 at *20 (denying summary judgment where plaintiff alleged officers "intentionally tightened his handcuffs to cause him pain, and ignored his requests that the handcuffs be loosened").

Accordingly, Officer Koster's motion for summary judgment should be granted and plaintiff's complaint against Officer Koster should be dismissed.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendants' motion for summary judgment should be granted in part and denied in part.  Defendants' motion for summary judgment should be granted on all claims in plaintiff's complaint except for plaintiff's excessive force claim against Officer Buckner.  Plaintiff's claims against the Port Authority and Officer Koster should be dismissed.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

 

 

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  December 7, 2011
Brooklyn, New York